Cartter, Oh. J.,
announced the decision of the court, in ■substance as follows :
The petition is predicated on the right of the postmaster to the enjoyment of a salary of four thousand dollars for each year, from 1872 to 1874 inclusive, and which he claims he has been deprived of by reason of the refusal of the Postmaster-General to readjust his compensation for that period. He asserts, in absolute terms, that there was an irregular or unauthorized adjustment, but that there has been no adjustment at all of his salary, and he would be entitled to the extraordinary remedy he invokes if it be true that the head of the department still refuses to comply with the law. But it turns out, upon examination, that his salary was readjusted by the proper officer at the time required by the statute, and upon data furnished by himself for that purpose, under oath, at the request of the department. The real ground of complaint is that he was entitled to a greater salary than that he received. He therefore asserts there was no adjustment. This is specious, but not satisfactory.
The statutes have assigned certain duties to the Postmaster- *336 General for the purpose of regulating the salaries of postmasters. He is to ascertain the revenues of each office at intervals of two years or oftener, according to his own judgment ; and upon a statement of facts to be furnished under oath of the postmaster, he fixes the compensation, and this process is called readjustment. This cannot be regarded as a merely ministerial function. He is called upon, before coming to a conclusion, to examine details, to criticise the materials upon which he is to act, and to pronounce a result after surveying the whole matter, including the interests of the government and the rights of the officer which are involved. It is a delicate and important duty, and implies a much higher exercise of discretion than the mere ministerial duty of computing figures into sums-total.
The review of these statutes and the instrumentality by which salaries from time to time are adjusted, is a labor of great discrimination and nice reasoning, as we have discovered in the discussion of this case, and involves the exercise of skill, ability, and discretion.. Now, the Postmaster-General can be compelled to enter upon the performance of this duty, but after he has acted and reached a result he is beyond the reach of the compulsory process of mandamus. This view is fatal to the application in this case. The genius of this writ, as explained by the Supreme Court and by this court, is to put an officer in motion to perform a duty devolving upon him by the law, and which he neglects or refuses to perform. It requires him simply to act, but if that action involves discretion he cannot be controlled in its exercise. Now, tested by this rule, how does the case stand upon the facts ? Mr. Creswell was Postmaster-General in 1872 and in 1874. The readjustment of the salary of the relator was fixed at that time, and he received it. The commissions were fixed according to the revenue received, and allowances were made for expenses which absorbed the whole amount collected at the office. This happened in 1872, and again in 1874. The postmaster acquiesced in that adjustment, and made his requisition to defray the expenses of the *337 office with reference to it. He now seeks to repudiate the action of the department, to ignore his own conduct in the matter, and to compel the present incumbent to make a readjustment of a salary which was fixed by his predecessor years ago. The former Postmaster-General has acted, and there is no authority to compel his successor to go back and undo the result and establish another standard of compensation for any postmaster. As a precedent it would be extremely injurious. Nothing but anarchy would follow. It would have a tendency, to resolve the administration of the executive departments into the judicial forum, and infringe upon the constitutional distinction between the executive and judicial branches of the government. We are disposed to keep this writ within the restricted limits defined by the decisions, and to hold that it can only issue in a case where the * law points out clearly a duty of a ministerial character. We do not think the case now before us furnishes any occasion for its use, and therefore deny the application.